**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 19-188-DLB-CJS**

**KY. TAX BILL SERVICING, INC.**                                                      **PLAINTIFF**


**v.**                                **MEMORANDUM OPINION AND ORDER**


**CITY OF COVINGTON, et al.**                                                 **DEFENDANTS**

* * * * * * * * * * * * * * *

This matter is before the Court on three separate Motions to Dismiss for failure to state a claim: (1) Defendant City of Covington's Motion to Dismiss (Doc. # 75), (2) Defendant Evans Landscaping, Inc.'s Motion to Dismiss (Doc. # 78), and (3) Defendant J.P. Excavating, Inc.'s Motion to Dismiss (Doc. # 80). Plaintiff Kentucky Tax Bill Servicing, Inc. has filed a Response to each of the above motions (Docs. # 88, 86, and 85, respectively). Defendant Covington and Defendant Evans Landscaping filed Replies (Docs. # 90 and 89, respectively). Therefore, the Motions have been fully briefed and are now ripe for the Court's review. For the reasons stated herein, Defendants' Motions are **granted in part** and **denied in part**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Kentucky Tax Bill Servicing alleges that properties on which it held tax liens were unlawfully demolished at the direction of Defendant City of Covington ("Covington") in Covington's attempt to revitalize homes within City boundaries. (Doc. # 72 ¶ 36). Covington contracted with Defendants Evans Landscaping, Inc. ("Evans Landscaping") and J.P. Excavating, Inc. ("J.P. Excavating") to demolish the at issue

1

properties . (*Id.*).  Plaintiff filed the instant case in the Eastern District for Kentucky at

Covington on December 23, 2019 asserting various claims under 42 U.S.C. § 1983.  (Doc.

# 1).  With leave of the Court, Plaintiff filed an Amended Complaint on April 13, 2020.

(Doc. # 72).  Plaintiff asserts four claims under § 1983: (I) Violation of Procedural Due

Process, (II) Substantive Due Process Violations, (III) Improper Taking Without Just

Compensation in violation of the Fifth Amendment,  (IV) Equal Protection Violation; and

two state law claims: (V) Trespass and (VI) Violations of Ky. Rev. Stat. § 381.770(6).[1]  (*Id.*

at ¶¶ 52-116).

The central dispute in this case concerns the concept of certificates of delinquency,

hereinafter referred to as "tax bills."  Property tax bills are mailed to property owners in

Kentucky each year, and if not paid by the due date of December 31st, they become

delinquent.  KRS §§ 134.015(1), 134.119.  Following a delinquent tax bill accruing on

January 1st of a given year, a taxpayer has until April 15th of that year to pay the bill or it

is transferred to the county clerk's office where the property subject to the tax bill is

located.  KRS § 134.122(1)(a).  Following the transfer, the tax bill becomes a "certificate

of delinquency" and the county clerk is then accountable for collection of the tax bill.  KRS

§ 134.122(2)(a).  In response to this obligation, many counties, including Kenton County,

where Defendant Covington is located, elect to sell these tax bills to third party

purchasers.  *Delinquent   Property   Tax*, KENTON   COUNTY   CLERK,

https://kentoncountykyclerk.com/home/delinquent-property-tax/  (last  visited  Feb.  8,

---

[1]      In Plaintiff's Amended Complaint, this statute is referred to as Ky. Rev. Stat.
§ 371.770(6).  However, after Defendant J.P. Excavating and Evans Landscaping pointed out that
the relevant statute was instead § 381.770(6), Plaintiff acknowledged it had mislabeled the
statute.  (Docs. # 85 at 13 and 86 at 10).  For the sake of clarity, the statute is referred to by the
correct section number, § 381.770(6), throughout this Order.

2021).   The tax bills are then offered for sale in July of each year.   *Id.*   Third party purchasers, like Plaintiff, can purchase the tax bills, which act as a lien on the property, and thereafter can collect the tax with additional interest.   KRS § 134.452(1)(a)-(b). Because tax bills are purchased based on the year they have become overdue, there could be multiple tax bills, owned by different third party purchasers, acting as liens on a single property.   If the property owner has not paid the delinquent taxes, plus interest, the third party purchaser can institute foreclosure proceedings.   KRS § 134.490(2).   The third party purchaser must institute foreclosure proceedings "within eleven (11) years of the date when the taxes became delinquent."   KRS § 134.546(1).

Plaintiff Kentucky Tax Bill Servicing is a registered third party purchaser of tax bills in Kenton County.   (Doc. # 72 ¶ 1).   Plaintiff purchases tax bills, collects interest on the bills, and in the case of foreclosure, purchases, rehabilitates, and sells the property at a profit.   (*Id.* at ¶ 49).   At issue here are tax bills that Plaintiff purchased for a number of properties[2] beginning in 2010 located in the City of Covington, within Kenton County. (*Id.*).

Plaintiff contends that Defendant Covington demolished each of the at issue structures without providing notice to Plaintiff.   (*Id.* at ¶ 44).   In order to demolish the structures, Covington brought code enforcement complaints to its Code Enforcement Board, which then issued demolition orders for specific properties.   (*Id.* at ¶ 37).   The exact dates of demolition are unknown.   Each of the relevant properties is now a vacant

---

[2]       Plaintiff purchased tax bills for twelve properties located in Covington: (1) 132 West 14th Street, (2) 211 West 16th Street, (3) 212 Bush Street, (4) 225 East 11th Street, (5) 317 West 12th Street, (6) 422 West 13th Street, (7) 1322 Holman Avenue, (8) 1567 Maryland Street, (9) 1604 Scott Boulevard, (10) 1610 Jefferson Avenue, (11) 1629 May Street, and (12) 1828 Garrard Street.   (Doc. # 72 ¶ 34).

lot.  (*Id.* at ¶ 47).

Ky. Rev. Stat. § 381.770(6), in effect during the relevant time period, required that "unless imminent danger exists on the subject property . . . the city . . . shall send, within fourteen (14) days of a final determination after hearing or waiver of hearing by the property owner, a copy of the determination to any lien holder of record of the subject property by first-class mail with proof of mailing."  Plaintiff's Amended Complaint alleges that no such notice was sent with respect to the properties at issue in this case.  (Doc. # 72 ¶ 44).   Prior to demolishing the properties at issue, Defendant Covington filed foreclosures in Kenton Circuit Court for seven of the at issue properties: 212 Bush Street, 225 East 11th Street, 317 East 12th Street, 422 West 13th Street, 1567 Maryland Avenue, 1629 May Street, and 1828 Garrard Street.  (*Id.* at ¶ 45).  As part of these foreclosure proceedings, Defendant Covington allegedly did not notify Plaintiff of its intention to demolish the structures on the properties.  (*Id.*).

## II.    ANALYSIS

### A.    Standard of Review

Granting a motion to dismiss is appropriate if a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Further, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In order to have "facial plausibility," the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  (*Id.*) (quoting *Twombly*, 550 U.S. at 556).  In evaluating a motion to dismiss, a court should

4

"construe the complaint in the light most favorable to the plaintiff" and "accept all well-pleaded factual allegations as true." *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570).  However, "mere conclusory statements, do not suffice" and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 678-79.

### B. Defendant Covington's Statute of Limitations Defense

Defendant Covington asserts a statute of limitations defense as to Plaintiff's first four counts, all of which are brought under 42 U.S.C. § 1983.  In support of its statute of limitations defense, Covington relies on several invoices attached as exhibits to its original motion to dismiss, filed prior to Plaintiff's Amended Complaint, that purportedly show the time frame in which demolitions of the at issue properties were completed.  (Docs. # 43-1 through 43-9).  Defendant incorporates these invoices by reference in its new Motion to Dismiss, (Doc. # 75 at 7-8), filed following Plaintiff's Amended Complaint, (Doc. # 72).  Covington specifically challenges as time-barred Plaintiff's first four Counts based upon the timing of when the relevant properties were demolished.  (Doc. # 75 at 6-13).  In response, Plaintiff asserts that a factual dispute remains as to the particular dates on which the properties were demolished and also alleges that it did not discover the demolitions sooner because of Covington's concealment of its plans to demolish the properties.  (Doc. # 88 at 9-16).

In evaluating a motion to dismiss, a court should only consider the complaint and attached exhibits, items in the record, and "documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Weiner*

*v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).  If the parties ask the court to consider matters outside the pleadings and the court opts to consider those outside materials, the motion to dismiss must be converted to a motion for summary judgment and evaluated under the corresponding standard in Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 12(d); *Spencer v. Grand River Navigating Co., Inc.*, 644 F. App'x 559, 561-62 (6th Cir. 2016) (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)).

The invoices at issue are neither attached to nor referenced in Plaintiff's Amended Complaint (Doc. # 72).  In fact, both parties acknowledge that the invoices are not part of the pleadings.  (Docs. # 75 at 5 n.1 and 88 at 6).  Because the invoices fall outside the pleadings, the Court declines to consider them in addressing Covington's Motion to Dismiss and will not convert the Motion to one for summary judgment.  *See Swanigan v. Nw. Airlines, Inc.*, 718 F. Supp. 2d 917, 922 (W.D. Tenn. 2010) ("It is within the trial court's discretion to determine whether to convert a motion to dismiss into a motion for summary judgment") (citing *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)).  Further, it would be inappropriate to consider the parties' fact-intensive arguments at this early stage, prior to discovery.  *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-cv-643, 2018 WL 6181356, at *3 (M.D. Tenn. Nov. 27, 2018) (declining to convert a motion to dismiss to a motion for summary judgment when discovery had not yet been completed) (citing *Wysocki*, 607 F.3d at 1104).  Considering these invoices would inadvertently raise the pleading standard by "forcing the plaintiff's allegations to be plausible not only as stated in the complaint, but also after attacked by whatever . . . documents [a defendant] wishes to attach to a motion to dismiss." *Id.*

Moreover, Covington raises several other grounds for dismissal in its Motion to Dismiss that do not rely on outside materials and which merely challenge the sufficiency of the allegations in the Amended Complaint.  (Doc. # 75 at 16-19).  While the parties suggest that the Court should convert the Motion to Dismiss *in part* (as to the statute of limitations defense only), (Docs. # 75 at 7 n.1 and 88 at 6), the Court declines to do so. Doing so would mean evaluating part of Defendant's Motion under Rule 12(b)(6) and part of the Motion under Rule 56.  The Court cannot see any legal basis for taking this approach.  Federal Rule of Civil Procedure 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, *the motion must* be treated as one for summary judgment under Rule 56." (emphasis added).  The italicized text suggests that converting a motion under Rule 12 is an all-or-nothing event: either the motion, in respect to all arguments, is treated as one for summary judgment or the motion remains a motion to dismiss.  In the instant case, without the benefit of discovery, the Court simply does not have enough information to convert the entire Motion to one for summary judgment.

As a further note, at this stage in the proceedings, the Court cannot determine with certainty whether the invoices Covington relies on in its Motion would be admissible under the Federal Rules of Evidence.  In this regard, discovery relating to the invoices and alleged concealment is necessary.

Covington has failed to show that the statute of limitations has run with respect to Counts I through IV based on the face of the Amended Complaint.  The statute of limitations is an affirmative defense, and a defendant has the initial burden of showing the statute of limitations has expired.  C*ampbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772,

775 (6th Cir. 2001). Accordingly, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is an 'inappropriate vehicle' for dismissing a claim based upon a statute of limitations." *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). Only if "the allegations in the complaint affirmatively show that the claim is time-barred" is dismissal warranted under Rule 12(b)(6). *Id.* (quoting *Cataldo*, 676 F.3d at 547); *see also Kirkwood v. Vickery*, No. 4:17-cv-86, 2018 WL 1189411, at *2 (W.D. Ky. Mar. 7, 2018) (noting that when assessing a statute of limitations defense on a motion to dismiss, the court need only consider the sufficiency of the complaint).

Here, Covington's statute of limitations defense is based on the invoices it incorporates by reference in its Motion to Dismiss. Covington does not attempt to argue that the statute of limitations has run based on the allegations contained in the Amended Complaint. Because Covington has not met its burden to prevail on a statute of limitations defense as to Counts I, II, III, and IV at this stage in the proceedings, Covington's Motion to Dismiss on that basis is **denied.**

### C.    Covington's Alternative Defense

Covington alternatively argues that Counts I, II, III, and IV of the Amended Complaint should be dismissed, as to certain properties, because Plaintiff did not file foreclosure actions within the necessary time period required by Ky. Rev. Stat. § 134.546, thereby forfeiting any interest Plaintiff had in those properties. (Doc. # 75 at 13). This argument is relevant to the following four properties: (1) 132 West 14th Street, (2) 1567 Maryland Avenue, (3) 1604 Scott Street, and (4) 1629 May Street. (*Id.* at 13-14). Covington argues that because the relevant properties became delinquent in either 2004

or 2007, "the deadline for filing a foreclosure action to recover on the certificates was January 1, 2019, at the latest." (Doc. # 75 at 14).

As discussed with respect to Covington's prior statute of limitations argument, a defendant bears the initial burden of showing that the statute of limitations has expired. C*ampbell*, 238 F.3d at 775. In order to succeed in meeting that burden here, Covington would have to produce evidence showing when the tax bills became delinquent, as well as evidence that Plaintiff did not file foreclosure actions on each property before the deadline elapsed. It does not appear that Defendant has provided any such evidence. However, in response, Plaintiff puzzlingly *concedes* that the relevant tax bills became delinquent in 2004 or 2007 and that it did not file foreclosure actions as to some of the relevant properties prior to 2019.[3] (Doc. # 88 at 19-20). This concession notwithstanding, Plaintiff argues that Defendants allegedly demolished those properties prior to expiration of their deadline to file for foreclosure, making it impossible for them to do so. (*Id.*). Plaintiff also disputes Defendant's method of calculating the foreclosure deadline under Ky. Rev. Stat. § 134.546.

As an initial matter, the Court agrees with Covington's interpretation of the foreclosure deadline. Ky. Rev. Stat. § 134.546(1) provides that "[a]ny action to collect any amount due on a certificate of delinquency or personal property certificate of delinquency may be brought at any time after the passage of one (1) year from the date

---

[3]    Plaintiff purportedly attached to its Response (Doc. # 88) tax bills for each of these properties, (Doc. # 88-6). However only one of the attached tax bills correlates to one of the four relevant properties—1604 Scott Street, which was purchased for tax year 2007. (Doc. # 88-6 at 2). Yet, as noted, Plaintiff concedes the other relevant tax bills became delinquent in 2004 or 2007. (Doc. # 88 at 19-20). Further, the Court may rely on the relevant tax bills attached to Plaintiff's response brief without converting the Motion to Dismiss to one for summary judgment because the tax bills are referenced in Plaintiff's Amended Complaint, (Docs. # 72 ¶¶ 32, 34), and are central to Plaintiff's claims. *See Amini*, 259 F.3d at 502.

the taxes became delinquent, and shall be brought within eleven (11) years of the date when the taxes became delinquent." Defendant Covington calculated this deadline by interpreting Ky. Rev. Stat. § 134.546 to mean that the statute of limitations begins to run as soon as the taxes are overdue. (Doc. # 75 at 15). Plaintiff instead interprets Ky. Rev. Stat. § 134.546 to mean that because the lien is tolled for one year, the third party purchaser has eleven years from January 1st of the year after the taxes became delinquent. (Doc. # 88 at 17).

To illustrate each party's interpretation of the statute, consider a tax bill that was due on December 31, 2007. Under Covington's interpretation, this bill would become delinquent on January 1, 2008, and therefore the statute of limitations for filing a foreclosure action would expire on January 1, 2019 (eleven years later). Under Plaintiff's interpretation, the bill becomes delinquent on January 1, 2008, the statute is tolled for one year until January 1, 2009, and then the statute of limitations would start to run, expiring on January 1, 2020 (twelve years later).[4] The plain text of the statute supports Covington's interpretation. Ky. Rev. Stat. § 134.546 explicitly states that foreclosure actions "shall be brought within eleven (11) years of the date when the taxes become delinquent." Nothing in the statute indicates that a tax is not "delinquent" at the time it becomes due. Accordingly, Covington's interpretation is correct, and for a tax bill that becomes delinquent on January 1, 2008, a foreclosure must be filed by January 1, 2019.

With respect to the property on 1604 Scott Street, Plaintiff purchased the tax bill for tax year 2007. (Doc. # 88-6 at 2). Thus, the tax bill would have become delinquent

---

[4]     In support of its interpretation, Plaintiff relies on emails from a Kentucky Revenue Cabinet official attached as an exhibit to its response brief. (Docs. # 88 at 18 and 88-7). However, that exhibit is outside the pleadings, and therefore the Court will not consider it in its analysis. *Amini*, 259 F.3d at 502.

on January 1, 2008, and the statute of limitation for filing a foreclosure action for 1604 Scott Street would have expired on January 1, 2019.

As for 132 West 14th Street, Plaintiff concedes that the tax bill was purchased for tax year 2004. (Doc. # 88 at 19). This means that the tax bill would have become delinquent on January 1, 2005, and the statute of limitation for filing a foreclosure action would have expired on January 1, 2016.

The tax bill for 1567 Maryland Avenue was purchased for tax year 2007. (Doc. # 88 at 20). This means that the tax bill would have become delinquent on January 1, 2008, and the statute of limitation for filing a foreclosure action would have expired on January 1, 2019.

The tax bill for 1629 May Street was purchased for tax year 2007. (Doc. # 88 at 20). Thus, that the tax bill would have become delinquent on January 1, 2008, and the statute of limitation for filing a foreclosure action would have expired on January 1, 2019.

However, even assuming Plaintiff did not file foreclosure actions for some of the relevant properties prior to the statutory deadlines—a point Plaintiff concedes, (*id.* at 19-20)—that concession is not fatal at this stage in the proceedings, because Covington admits that it demolished each of the four properties prior to expiration of the deadlines. (Doc. # 75 at 7-8) (stating the month and year in which each property was demolished). Thus, Plaintiff retained an interest in the properties at the time they were demolished. Plaintiff similarly argues that while the exact dates of the demolitions remain uncertain, based on the information available, the relevant properties were demolished well before the expiration of the statute of limitations to file foreclosure actions for each of the relevant properties. (*Id.* at 20-21). For the demolition dates, Plaintiff relies on the invoices

11

submitted by Covington, which are outside of the pleadings.  (*See* Doc. # 88 at 9-10, 12 n.22).  Nevertheless, for its part, Covington does not contest that the properties were demolished prior to the foreclosure deadlines.  Accepting Covington's concession that each of the four relevant properties were demolished prior to their respective foreclosure deadlines, (*see, e.g.*, Doc. # 75 at 7), Defendant's argument fails.  In other words, despite Plaintiff's own concessions regarding when the tax bills became delinquent and that it did not file timely foreclosure actions as to each of the four properties, Covington's argument is self-defeating because it has admitted it demolished the properties prior to those deadlines.  Thus, Covington's argument that Plaintiff's failure to file foreclosure actions with respect to each of the four identified properties rendered those properties "valueless" is not persuasive.

For the above reasons, Covington's Motion to Dismiss as to Counts I, II, III, and IV, is **denied.**

### D.  Defendants J.P. Excavating and Evans Landscaping's Private Actor Defense

Both Defendants, J.P. Excavating and Evans Landscaping, put forth the same defense to Counts I through IV, Plaintiff's § 1983 claims.  Both contend that they are not liable under § 1983 because they are private actors and not government entities.  (Docs. # 78 at 4 and 80 at 3).  The text of § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."  Thus, typically a § 1983 claim cannot be asserted against a private party.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).  However, in

certain circumstances, "private persons may, by their actions, become state actors for § 1983 purposes." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). In the Sixth Circuit, three tests are used to analyze whether a private party "can fairly be said to be a state actor—the public function test, the state compulsion test, and the nexus test." *Mango v. Columbus*, Nos. 2:19-cv-3120, 2:19-cv-5282, 2020 WL 5247939, at *20 (S.D. Ohio Sept. 3, 2020) (citing *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995)). Further, a private party may be considered a state actor if "the offending party 'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State," known as the "joint action" theory. *Tahfs*, 316 F.3d at 590 (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)). In order to state a claim on which relief may be granted, only one of the above tests must be met.

"To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Here, Plaintiff's Amended Complaint alleges that both J.P. Excavating and Evans Landscaping acted on behalf of Defendant Covington by demolishing the at issue properties. (Doc. # 72 ¶¶ 3-4, 34). Plaintiff more specifically states that Covington contracted with J.P. Excavating and Evans Landscaping to carry out the demolitions following orders issued by the Covington Code Enforcement Board. (*Id.* at ¶¶ 36-38). Plaintiff alleges that as agents of Covington, J.P. Excavating and Evans Landscaping were acting under the color of state law "when they entered private property as a joint participant with Covington in the demolition scheme." (*Id.* at ¶ 66). Plaintiff further argues that J.P. Excavating and Evans

Landscaping "had no discretion but to complete the demolitions as ordered by Defendant, Covington." (*Id.*).  Based on the conduct of J.P. Excavating and Evans Landscaping, Plaintiff asserts that it was deprived of the value of the structures in contravention of federal law. (*Id.* at ¶¶ 53-55).  Plaintiff repeats these allegations in Counts II, III, IV, V, and VI. (*Id.* at ¶¶ 71, 78, 95, 102, 107).

Taking all factual allegations as true and construing the Complaint in the light most favorable to Plaintiff, Plaintiff has adequately alleged that J.P. Excavating and Evans Landscaping were state actors under at least one of the relevant tests.  This preliminary finding does not mean that any of these theories will conclusively establish that the contractor Defendants were acting as state actors, but because it is plausible that they were acting on behalf of the state, dismissal of Plaintiff's § 1983 claims is not warranted at this stage of the proceedings.  S*ee Seifert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020) (noting that a "plaintiff['s] ability to survive a motion to dismiss with respect to the state-actor question does not necessarily mean that they could survive summary judgment") (quoting *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 677 (6th Cir. 2018)).

The public function test is met when a private party "exercise[s] powers which are traditionally exclusively reserved to the state."  *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).  This is a high standard to meet, and "while many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'"  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978).  However, one of the few functions that has been reserved to the States is eminent domain.  *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974).  Eminent domain is where "private property is

taken for public use." *Welch v. Tennessee Valley Auth.*, 108 F.2d 95, 98 (6th Cir. 1939).

Count III of Plaintiff's Complaint states that the Defendants violated the Takings Clause

of the Fifth Amendment.  (Doc. # 72 ¶ 79).  Plaintiff further alleges that "[t]he Defendants

and agents took and demolished private property the Plaintiff had a legal right in without

just compensation."  (*Id.* at ¶ 81).  The Takings Clause of the Fifth Amendment provides

that "private property [shall not] be taken for public use, without just compensation."  U.S.

CONST. amend. V.  Construing the Amended Complaint in the light most favorable to

Plaintiff, the Court finds Plaintiff has alleged the legal elements of an eminent domain

claim.  Therefore, Plaintiff has plausibly alleged that by engaging in eminent domain, a

function traditionally reserved to the State, the contractor Defendants were state actors

for purposes of § 1983 liability.

Plaintiff has also adequately pled that J.P. Excavating and Evans Landscaping

were state actors under the state compulsion test, which "requires that a state exercise

such coercive power or provide such significant encouragement, either overt or covert,

that in law the choice of the private actor is deemed to be that of the state."  *Wolotsky*,

960 F.2d at 1335.  Plaintiff alleges that Covington provided J.P. Excavating and Evans

Landscaping with the necessary addresses and demolition orders, and gave the

contractors "no discretion but to complete the demolitions as ordered by Defendant,

Covington."  (Doc. # 72 ¶ 66).  This allegation at least raises a plausible inference that

the actions of J.P. Excavating and Evans Landscaping were the actions of Covington.

Further, the inquiry into whether the Defendants are state actors "is fact-specific,

and the presence of state action is determined on a case-by-case basis."  *Chapman v.

Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003).  Therefore, discovery may be beneficial

to develop additional facts to support or discredit Plaintiff's claims.  *See Minges v. Butler Cnty. Agr. Soc.*, 585 F. App'x 879, 881 (6th Cir. 2014).

Put simply, at this time, Plaintiff has set forth adequate allegations in its Complaint to support a plausible finding that the contractor Defendants were acting as state actors when they demolished the relevant properties.  Therefore, Defendants J.P. Excavating and Evans Landscaping's Motions to Dismiss (Docs. # 80 and 78), are **denied** as to the § 1983 claims in Counts I through IV.

### E.   Plaintiff's Equal Protection Claim

In Count IV, Plaintiff alleges an equal protection violation under § 1983 against Defendants Covington, J.P. Excavating, and Evans Landscaping.  (Doc. 72 ¶¶ 96-101). Each Defendant challenges Plaintiff's equal protection claim on the same ground— Plaintiff failed to state an equal protection violation because it did not plead that it was treated disparately as compared to other similarly situated parties.[5]  (Doc. # 75 at 16). The Equal Protection Clause provides that "[n]o state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  To assert a valid equal protection claim, a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).  In Plaintiff's Response to Covington's Motion to Dismiss, Plaintiff alleges that it can make out a "class

---

[5]   Defendants Evans Landscaping and J.P. Excavating incorporate by reference Covington's argument as to Plaintiff's equal protection claim.  (Docs. # 78 at 1 and 80 at 1).

of one" equal protection claim.  (Doc. # 88 at 22-23).  Under this theory, Plaintiff must show that it was treated differently than other similarly situated parties without a rational basis.  *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005).

However, in Plaintiff's Amended Complaint, Plaintiff states only that Defendants "acted in a manner that violated equal protections guaranteed to them by Kentucky law." (Doc. # 72 ¶ 96).  Plaintiff makes no mention of it being disparately treated in the Complaint and instead states it belonged to a "specific class, lienholders of record, to whom Covington owed a duty." (*Id.* at ¶ 97).  Moreover, Plaintiff does not allege that similarly situated parties have not been subject to the same treatment.  In fact, Plaintiff alleges in its Amended Complaint that "it is believed there are numerous other similarly situated and affected plaintiffs as the City of Covington demolished over 100 buildings and structures without the legal required notice . . . ." (Doc. # 72 ¶ 25).

Because Plaintiff must show both disparate treatment and either that it belonged to a suspect class or that Defendants had no rational basis for their actions, Plaintiff has not adequately pled an equal protection claim.  Without an allegation of disparate treatment, Plaintiff simply cannot succeed on its equal protection claim.  *Napolitano*, 648 F.3d at 379 (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) (holding that the "threshold element of an equal protection claim is disparate treatment").  In addition, when a plaintiff merely "allege[s] that he was treated unfairly as an individual by [the defendants'] actions," plaintiff's equal protection claim should be dismissed.  *Ravansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).

Because Plaintiff has not alleged facts supporting the elements of an equal protection claim, Defendants' Motions to Dismiss as to Count IV are **granted.**

### F.    Remaining State-Law Claims

Plaintiff asserts two more claims against the Defendants: Count V, state-law trespass, and Count VI, violation of KRS § 381.770(6).  (Doc. # 72 at 28-29).  Covington has requested that the Court refuse to exercise supplemental jurisdiction over the pendent state law claims were the Court to dismiss Plaintiff's § 1983 claims.  (Doc. # 75 at 18).  However, because the § 1983 claims will be proceeding to discovery, it is inappropriate to decline to exercise supplemental jurisdiction over the state law claims at this juncture.

#### 1.    *Trespass Claim*

Plaintiff cannot state a claim under Kentucky common law because Plaintiff has not suffered a trespass.  (Docs. # 90 at 12, 78 at 7, and 80 at 6-7).  Plaintiff argues that it has adequately asserted injury under the statute based on Defendants' alleged trespass on properties on which it held tax liens.  (Doc. # 88 at 24-25).  However, in order to sustain a cause of action for trespass, plaintiff "must show only that he had actual or constructive possession of the real property in question at the time the alleged injury occurred." *Bowman v. Hibbard*, 236 S.W.2d 938, 941 (Ky. 1951).  In fact, "[o]wnership or possession of the land is an evidentiary fact that must be established" to sustain a cause of action for trespass.  *Fleming v. EQT Gathering, LLC*, 509 S.W.3d 18, 22 (Ky. 2017).  Plaintiff makes no assertions in its Amended Complaint, (Doc. # 72), or its Responses to the Motions to Dismiss (Docs. # 85, 86, and 88), that Kentucky Tax Bill either held actual or constructive possession, or ownership, of the properties at issue.  Instead, Plaintiff simply asserts that

it has an interest in the property as a lienholder and therefore it may sustain a cause of action for trespass.  (Docs. # 85 at 12, 86 at 9, and 88 at 24-25).  But, in Kentucky, a lien is not equivalent to actual or constructive possession.  *See Fleming*, 509 S.W.3d at 22 n.4; *Scott v. Walker*, 7 Ky. Op. 334, 335 (Ky. 1873).  Therefore, Plaintiff has failed to adequately allege that it suffered an injury in the form of a trespass.  Thus, Defendants' Motions are **granted** as to Count V, Plaintiff's trespass claim.[6]

### 2.    *Claim under KRS § 381.770(6)*

Plaintiff alleges in its Amended Complaint that Defendant Covington did not provide the necessary notice prior to the demolitions of the properties, as required by Ky. Rev. Stat. § 381.770(6).  (Doc. # 72 ¶¶ 110-111).  Plaintiff further states that under Ky. Rev. Stat. § 446.070, it is entitled to recovery of damages for the violation of Ky. Rev. Stat. § 381.770(6).  All Defendants have moved to dismiss this claim—Covington asks the Court to refuse to exercise supplemental jurisdiction if the Plaintiff's § 1983 claims are dismissed, and J.P. Excavating and Evans Landscaping argue that the statute does not

---

[6]      While Defendants argue that Plaintiff has failed to establish active or constructive possession—a necessary element of trespass—they mislabel the argument as one based on standing rather than failure to state a claim.  (Docs. # 90 at 12, 78 at 7, and 80 at 6-7).  The Supreme Court has said that standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal," *Warth v. Seldin*, 422 U.S. 490, 500 (1975), and instead turns on whether the injury complained of is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted).  Here, the injury Plaintiff asserts—destruction of its lienhold interest in real property—is sufficient to satisfy the injury-in-fact requirement of Article III standing.  *See East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1267 (9th Cir. 2020) (observing that "[m]ore recent Supreme Court opinions have described injury-in-fact as 'a judicially cognizable interest'—implying that 'an interest can support standing even if it is not protected by law . . . so long as it is the sort of interest that courts think to be of sufficient moment to justify judicial intervention.'") (quoting *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1172 (10th Cir. 2006)).  Further, the Sixth Circuit has clarified that although a plaintiff's claim may fail on the merits, "does not deprive the plaintiff of standing to assert it."  *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 489 (6th Cir. 2021) (holding that a lessee had Article III standing to sue under the Takings Clause when it had an arguable interest in the property).

contemplate private entities in its scope.  (Docs. # 75 at 18-19, 78 at 5, and 80 at 7).  The text of Ky. Rev. Stat. § 381.770(6), now repealed,[7] states that "[u]nless imminent danger exists on the subject property that necessitates immediate action, the city, county, consolidated local government, or urban-county government shall send, within fourteen (14) days of a final determination after hearing or waiver of hearing by the property owner, a copy of the determination *to any lien holder of record* of the subject property by first-class mail with proof of mailing."  KRS § 381.770(6) (emphasis added).  Furthermore, Ky. Rev. Stat. § 446.070 states, "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation . . . ."  While Plaintiff's Amended Complaint fails to state a claim for which relief may be granted against J.P. Excavating and Evans Landscaping, there is a plausible claim against Covington. Each of the Defendants will be discussed in turn.

J.P. Excavating and Evans Landscaping claim that they cannot be liable for violating Ky. Rev. Stat. § 381.770(6) because they are not considered government entities.  (Docs. # 78 at 5, 80 at 7).  They are correct.  The plain text of the statute, which applies to cities, counties, consolidated local governments, and urban-county governments, does not contemplate private entities, even if acting on behalf of a covered entity, such as Covington.  *See* KRS § 381.770(6).  The text of Ky. Rev. Stat. § 381.770(6), which specifically lists local governments as within its scope, is demonstrably different than the text of § 1983, which applies to "every person," and encompasses the state actor doctrine.  In Kentucky, "the plain meaning of the statutory

---

[7]     The text of this repealed statute is now found in Ky. Rev. Stat. § 65.8840, but Ky. Rev. Stat. § 381.770(6) will be referenced as this was the statute in effect during the demolitions at issue.

language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source." *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 820 (Ky. 2005). Because the plain text of the statute only contemplates notification by government entities, there can be no claim under Ky. Rev. Stat. § 381.770(6) against J.P. Excavating and Evans Landscaping. Therefore, as to J.P. Excavating and Evans Landscaping, their Motions to Dismiss on Count VI are **granted.**

However, the claim under Ky. Rev. Stat. § 381.770(6) may proceed as alleged against Defendant Covington, which does not challenge Count VI under Rule 12(b)(6). The text of Ky. Rev. Stat. § 381.770(6) explicitly lists cities and local governments as included within its scope. Plaintiff's Amended Complaint identifies Covington as a city and alleges that Covington did not send notification of a pending demolition. (Doc. # 72 ¶¶108-110). Covington does not specifically refute these allegations, as it does not contend that it provided the requisite notice. (Doc. # 75 at 18-19). Therefore, Plaintiff has stated a claim "for relief that is plausible on its face," and Defendant Covington has presented no alternative argument in its favor. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Thus, Covington's Motion to Dismiss as to Count VI of Plaintiff's Amended Complaint is **denied**.

## III.   CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Defendant Covington's Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 75) is **GRANTED IN PART** and **DENIED IN PART**. Specifically:

      (a)    Plaintiff's § 1983 claims, alleged in Counts I through III, **may proceed** to discovery;

      (b)    Plaintiff's equal protection claim, alleged in Count IV, is **dismissed with prejudice**;

      (c)    Plaintiff's state-law trespass claim, alleged in Count V, is **dismissed with prejudice**; and

      (d)    Plaintiff's claim asserting a violation of Ky. Rev. Stat. § 381.770(6), and damages under § 446.070, **may proceed** to discovery.

(2)    Defendants Evans Landscaping and J.P. Excavating's Motions to Dismiss Plaintiff's Amended Complaint (Docs. # 78 and 80) are **GRANTED IN PART** and **DENIED IN PART**.  Specifically:

      (a)    Plaintiff's § 1983 claims, alleged in Counts I through III, **may proceed** to discovery;

      (b)    Plaintiff's equal protection claim, alleged in Count IV, is **dismissed with prejudice**;

      (c)    Plaintiff's state-law trespass claim, alleged in Count V, is **dismissed with prejudice**; and

      (d)    Plaintiff's claim asserting a violation of Ky. Rev. Stat. § 381.770(6), and damages under § 446.070, is **dismissed with prejudice**.

(3)    Defendants Covington, Evans Landscaping, and J.P. Excavating are **ordered to file a responsive pleading**, in the form of an answer, to Plaintiff's Amended Complaint, (Doc. # 72), **within twenty (20) days**; and

(4)     Once the answers have been filed, and pursuant to Rules 16 and 26 of the Federal Rules of Civil Procedure, the parties shall:

(a)     Within twenty-one (21) days of the answers being filed, meet either in person or by telephone, to discuss the nature and basis of their claims and defenses, and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures requires by Rule 26(a)(1) of the Federal Rules of Civil Procedure, and to develop a proposed discovery plan. *See* Fed. R. Civ. P. 26(f).

(b)     Within ten (10) days after the meeting, the parties shall file a joint status report containing:

(i)     the proposed discovery plan;

(ii)     the parties' estimate of the time necessary to file pretrial motions;

(iii)     the parties' belief as to whether the matter is suitable for some form of alternative dispute resolution such as mediation;

(iv)     the parties' estimate as to the probable length of trial; and

(v)     whether the parties will consent to the jurisdiction of a Magistrate Judge (Smith) for all further proceedings, including trial, pursuant to 28 U.S.C. § 636(c).  Consent forms are attached to this Order and forms signed by all parties' counsel should be filed no later than the date counsels' joint status report is due.  If all parties, by counsel, so consent, the Clerk of Court shall reassign this matter to the appropriate Magistrate Judge without the necessity of further order of the Court.  L.R. 73.1(c).

(c)     Should the parties find that a joint report is not possible, the parties shall each file individual reports, which the Court shall entertain for purposes of setting out its Scheduling Order or other appropriate orders.

This 8th day of February, 2021.

Signed By:

*David L. Bunning*

United States District Judge